UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

**PPC BROADBAND, INC., d/b/a PPC,**

*Plaintiff*,

**-vs-**

**PERFECTVISION
MANUFACTURING, INC.,**

*Defendant*.

Civil Action No. 5:13-CV-0134-GTS-DEP

**PPC'S MEMORANDUM OF LAW IN OPPOSITION OF PERFECTVISION'S MOTION
TO DISMISS, TRANSFER AND/OR STAY**

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ............................................................................. iii

INTRODUCTION ........................................................................................... 1

BACKGROUND ............................................................................................. 2

A.    The Parties ........................................................................................... 2

B.    The Instant Complaint And The Complaint Against PCT ................... 3

C.    History Of The Arkansas Action ......................................................... 4

ARGUMENT .................................................................................................. 6

I.    PerfectVision's Motion Should Be Denied Under The First Filed Rule. ......................... 6

    A.    The Arkansas Court Lacks Subject Matter Jurisdiction Over The Original Complaint. ............................................................... 8

    B.    The Ehret Patent Is Not "Related" To The Patents That Were The Subject Of The Original Complaint Filed In The Arkansas Action ................... 11

II.    Transfer Is Not Warranted Under 28 U.S.C. § 1404(a). .................................. 13

    A.    Weight Accorded Plaintiff's Choice Of Forum .................................. 14

    B.    Convenience Of The Witnesses ........................................................ 14

    C.    Convenience Of The Parties ............................................................. 18

    D.    Location Of Relevant Documents And Relative Ease Of Access To Sources Of Proof ......................................................... 18

    E.    Situs Of Operative Events ................................................................ 19

    F.    Availability Of Process To Compel Attendance Of Unwilling Witnesses ....................................................... 20

    G.    Relative Means Of Parties ................................................................ 21

    H.    Comparative Familiarity Of Each District With Governing Law ........ 21

I.    Judicial Efficiency And Interests Of Justice........................................................22

CONCLUSION..................................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Abbott Labs. v. Johnson and Johnson, Inc.*, 524 F. Supp. 2d 553 (D. Del. Nov. 28, 2007) .......................................................................................................... 10, 12

*Already, LLC v. Nike, Inc.*, 184 L. Ed. 2d 553 (2013) ............................................. 8, 9

*Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474 (S.D.N.Y. 2006) ............. 22

*Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am. Inc.*, 474 F. Supp. 2d 474 (S.D.N.Y. 2007) .......................................................................... 14, 19

*Astor Holdings, Inc. v. Roski*, 01-CV-1905, 2002 U.S. Dist. LEXIS 758, *23-24 (S.D.N.Y. Jan. 17, 2002) .................................................................................... 19

*Bates, Bates v. C & S Adjusters, Inc.*, 980 F.2d 865 (2d. Cir. 1992) ........................... 19

*BBC Intern. Ltd. v. Lumino Designs, Inc.*, 441 F. Supp. 2d 438 (E.D.N.Y. 2006) ..................... 22

*Benitec Australia, Ltd. v. Nucleonics, Inc.*, 495 F.3d 1340 (Fed. Cir. 2007) ............................... 8

*Cirrex Sys. LLC v. InfraReDx, Inc.*, 10-CV-3952, 2010 U.S. Dist. LEXIS 90814 (S.D.N.Y. Aug. 31, 2010) ............................................................................... 15

*Citigroup, Inc. v. City Holding Co.*, 97 F. Supp. 2d 549 (S.D.N.Y. 2000) ................................. 13

*Cohen v. Transp. Ins. Co.*, 10-CV-0743, 2011 U.S. Dist. LEXIS 92375 (N.D.N.Y. Aug. 18, 2011) ............................................................................................. 21

*Coloplast A/S v. Amoena Corp.*, 92-CV-3432, 1992 U.S. Dist. LEXIS 17587 (S.D.N.Y. Nov. 18, 1992) ............................................................................... 15

*Columbia Pictures Industries, Inc. v. Fung*, 447 F. Supp. 2d 306 (S.D.N.Y. 2006) ................... 22

*CommScope, Inc. v. Commscope Int'l Group Co.*, 809 F. Supp. 2d 33 (N.D.N.Y. 2011) ............................................................................................. 21

*Continental Grain Co. v. The FBL-585*, 364 U.S. 19 (1960) ...................................... 22

*Cosden Oil & Chemical Co. v. Foster Grant Co.*, 432 F. Supp. 956 (D. Del. 1977) ............. 7, 10, 12

*Crossbow Tech., Inc. v. YH Tech.*, 531 F. Supp. 2d 1117 (N.D. Cal. 2007) ............................... 8

*Defenshield Inc. v. First Choice Armor & Equip.*, 10-CV-1140, 2012 U.S. Dist. LEXIS 44276 (N.D.N.Y. Mar. 29, 2012) ............................................................. passim

*DiStefano v. Carozzi N. Am., Inc.*, 98-CV-7137, 2002 U.S. Dist. LEXIS 23042 (E.D.N.Y. Nov. 16, 2002) ............................................................. 19

*Easyweb Innovations, LLC v. Facebook, Inc.*, 11-CV-5121, 2012 U.S. Dist. LEXIS 123833 (E.D.N.Y. Aug. 30, 2012) ............................................................. 19

*Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341 (Fed. Cir. 2005) .................................. 6, 12

*Fairfax Dental v. S.J. Filhol Ltd.*, 645 F. Supp. 89 (E.D.N.Y. 1986) ........................................ 22, 23

*Ferens v. John Deere Co.*, 494 U.S. 516 (1990) ............................................................. 22

*First Union Nat'l Bank v. Paribas*, 135 F. Supp. 2d 443 (S.D.N.Y. 2001) ............................... 16

*Fleet Capital Corp. v. Mullins*, 03-CV-6660, 2004 U.S. Dist. LEXIS 4425 (S.D.N.Y. Mar. 18, 2004) ............................................................. 7

*Furminator, Inc. v. Ontel Prods. Corp.*, 246 F.R.D. 579 (E.D. Mo. 2007) ................................. 8

*Goggins v. Alliance Capital Mgmt., L.P.*, 279 F. Supp. 2d 228 (S.D.N.Y. 2003) ..................... 23

*Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567 (2004) ........................................ 9

*Halo Elecs., Inc. v. Bel Fuse Inc.*, 07-06222, 2008 U.S. Dist. LEXIS 109786 (N.D. Cal. May 5, 2008) ............................................................. 11

*Hildebrand v. Dentsply Int'l, Inc.*, 06-CV-5439, 2011 U.S. Dist. LEXIS 112458 (E.D. Pa. Sept. 30, 2011) ............................................................. 9

*In re Bennett Funding Group, Inc.*, 259 B.R. 243 (N.D.N.Y. 2001) ......................................... 14

*Intel Corp. v. AmberWave Sys. Corp.*, 233 F.R.D. 416 (D. Del. 2005) ................................. 7, 10, 12

*Internet Pipeline, Inc. v. Aplifi, Inc.*, 10-CV-6089, 2011 U.S. Dist. LEXIS 112467 (E.D. Pa. Sept. 29, 2011) ............................................................. 9

*Iragorri v. United Techs. Corp.*, 274 F.3d 65 (2d Cir. 2001) ................................................ 14

*Lans v. Gateway 2000, Inc.*, 84 F. Supp. 112 (D. D.C. 1999) ............................................. 10

*Lasala v. Lloyds TSB Bank*, 514 F. Supp. 2d 447 (S.D.N.Y. 2007) ....................................... 16

*Mann Design, Ltd. P'ship v. Bounce, Inc.*, 138 F. Supp. 2d 1174 (D. Minn. 2001) .................. 11

*Matthews Intern. Corp. v. BioSafe Eng'g, LLC*, 695 F.3d 1322 (Fed. Cir. 2012) ....................... 9

*Myers v. Bennett Law Offices*, 238 F.3d 1068 (9th Cir. 2001) ................................... 19

*Neil Bros. Ltd. v. World Wide Lines, Inc.*, 425 F. Supp.2d 325 (E.D.N.Y. 2006) ...................... 14

*Nissan Motor Acceptance Corp. v. Dealmaker Nissan, LLC*, 09-CV-0196, 2011 U.S. Dist. LEXIS 2627 (N.D.N.Y. Jan. 11, 2011) .............................................................. 21

*Norman IP Holdings, LLC v. Lexmark Int'l, Inc.*, 11-CV-0495, 2012 U.S. Dist. LEXIS 112757, *30 (E.D. Tex. Aug. 10, 2012) ....................................................... 23

*Northwest Airlines, Inc. v. Filipas*, 07-CV-4803, 2008 U.S. Dist. LEXIS 6928 (D. Minn. Jan. 30, 2008) .................................................................. 6

*Oakley, Inc. v. Bugaboos Eyewear Corp.*, 09-CV-2037, 2010 U.S. Dist. LEXIS 110337 (S.D. Cal. Oct. 15, 2010) ........................................................ 7

*Optigen, LLC v. Int'l Genetics, Inc.*, 877 F. Supp. 2d 33 (N.D.N.Y. 2012) ................................ 21

*Rescuecom Corp. v. Chumley*, 07-CV-0690, 2011 U.S. Dist. LEXIS 31928 (N.D.N.Y. Mar. 28, 2011) ....................................................................... 21

*Research Found. of State Univ. of New York v. Luminex Corp.*, 07-CV-1260, 2008 U.S. Dist. LEXIS 88618 (N.D.N.Y. Nov. 3, 2008) ....................................... 14

*Schnabel v. Ramsey Quantitative Sys.*, 322 F. Supp. 2d 505 (S.D.N.Y. 2004) ........................ 6, 13

*Super Sack Mfg. Corp. v. Chase Packaging Corp.*, 57 F.3d 1054 (Fed. Cir. 1995) .................... 8

*Tomjai Enters., Corp. v. Laboratorie Pharmaplus USA, Inc.*, 12-CV-3729, 2012 U.S. Dist. LEXIS 107033 (S.D.N.Y. July 31, 2012) ....................................... 14

*Toy Biz v. Centuri Corp.*, 990 F. Supp. 328 (S.D.N.Y. 1998) .................................... 7, 10

*United States v. Int'l Bus. Machs. Corp.,* 90 F.R.D. 377 (S.D.N.Y. 1981) ................................ 16

*Vianix Delaware LLC v. Nuance Commc'n, Inc.*, 09-CV-0067, 2009 U.S. Dist. LEXIS 40992 (D. Del. May 12, 2009) ............................................................ 9

*Williams v. City of New York*, 03-CV-5342, 2006 U.S. Dist. LEXIS 6470 (S.D.N.Y. Feb. 21, 2006) ....................................................................... 23

*Wood v. Maguire Auto. LLC*, 09-CV-0640, 2011 U.S. Dist. LEXIS 109293 (N.D.N.Y. Sept. 26, 2011) ....................................................................... 21

*Wyndham Associates v. Bintliff*, 398 F.2d 614 (2d Cir. 1968) ................................................... 22

**Statutes**

28 U.S.C. § 1404(a) .................................................................................................... 13

35 U.S.C. § 299 ............................................................................................................ 23

**Rules**

Fed. R. Civ. P. 45(b)(2) ............................................................................................... 20

**Other Authorities**

*2011 Annual Report of the Director:  Judicial Business of the United States Courts*,
entitled "U.S. District Courts—Civil Cases Pending, by District and Length of Time
Pending, as of September 30, 2011" ............................................................................ 24

## INTRODUCTION

Plaintiff, PPC Broadband, Inc., d/b/a PPC ("PPC"), respectfully submits this memorandum of law in opposition to the motion filed by Defendant, PerfectVision Manufacturing, Inc. ("PerfectVision"), to dismiss, transfer and/or stay this action under its erroneous theory that the action filed by PerfectVision in the Eastern District of Arkansas ("Arkansas Action") was the first filed regarding the parties' dispute concerning whether one of PerfectVision's products infringes PPC's United States Patent No. 8,366,481 (the "Ehret Patent").

In fact, PPC's filing of its Complaint before this Court was the first filing regarding the parties' dispute concerning the Ehret Patent. In an effort to convince this Court otherwise, PerfectVision has presented this Court with a story that glosses over two key facts.

First, the Arkansas Action, as it currently exists, is a declaratory judgment action seeking a declaration that one of PerfectVision's products does not infringe other PPC patents that are *not* the subject of this lawsuit. Although PerfectVision has sought leave to amend its complaint in the Arkansas Action to assert a claim for declaratory relief concerning the Ehret Patent, that motion for leave has not been acted on by the Arkansas Court. In other words, there was no claim pending in the Arkansas Action concerning the Ehret Patent when PPC filed its Complaint before this Court. Thus, the Arkansas Action cannot constitute the "first filed" case.

Second, PerfectVision's proposed cause of action for declaratory relief with respect to the Ehret Patent *cannot* be joined in the Arkansas Action. This is because, as set forth in the pending motions filed by PPC in the Arkansas Action, the Arkansas Court lacks subject matter over that action, making PerfectVision's belated attempt to add its Ehret Patent claims to that case futile. Rather, to assert its claims concerning the Ehret Patent in Arkansas, PerfectVision

would have to file a new action, which it has ***not*** done, likely because doing so would reveal as fiction its argument that the Arkansas Action was the first filed case concerning the Ehret Patent.

Furthermore, the balance of convenience and justice otherwise favors venue in this district, with seven of the factors weighing in favor of venue here and none of the factors weighing in favor of transfer. For example, a related lawsuit against another accused infringer, PCT International, Inc. ("PCT"), is pending in the this district as Civil Action Number 13-CV-0135-NAM-TWD. In that case, PPC asserts a cause of action for infringement of the Ehret Patent by one of PCT's products. As a result, the claim terms of the Ehret Patent will need to be construed there, as well as in this case. If this action remains in this district, the claim terms may be construed in both actions by this Court in a coordinated manner. However, if this action is transferred to the Arkansas Court, it will result in a duplication of effort and waste of judicial resources, as well as the potential for an inconsistent construction of the same claim terms.

Similarly, this action includes causes of action arising under New York law, based on conduct that occurred within New York. If this action is transferred to the Arkansas Court, that court will be forced to determine issues of New York law, evaluate activities that occurred within this district, and hear from witnesses who are located here who would have to travel to Arkansas to testify at trial.

For these reasons, Defendant's motion should be denied and this action should remain with this Court.

## **BACKGROUND**

### A.     **The Parties**

Headquartered in Syracuse, New York, PPC is a recognized leader in the design and manufacture of coaxial cable connectors and related products. (Declaration of David H. Jackson ("Jackson Decl.), at ¶6.) Coaxial cables allow for the transmission of electronic signals, such as

those used to transmit video or data signals.  (Jackson Decl., ¶7.)  A coaxial cable connector

attaches to the end of a length of cable and extends the structure of the cable all the way through

to the port on the television, cable box, cable modem, or other device to which the cable is being

attached.  (Jackson Decl., ¶8.)  It also facilitates attachment of the cable to the port.  (Jackson

Decl., ¶9.)  PPC's industry-leading connectors are used throughout the world, and PPC has been

awarded a number of patents on its product designs.  (Jackson Decl., ¶11.)

PerfectVision is based in North Little Rock, Arkansas, and sells coaxial cable connectors

and related products in competition with PPC and others in the market.  (Dkt. No. 8, Attach. 2,

Ex. A, ¶¶1, 3-4, 6.)  Among the products offered by PerfectVision is a coaxial cable connector

known as SignaLoc (the "SignaLoc Connector").  (Dkt. No. 1 at ¶16.)

### B.    The Instant Complaint And The Complaint Against PCT

On February 5, 2013, the Ehret Patent issued and PPC filed the instant action.  (*See* Dkt.

No. 1, Attach. 1.)  The Complaint alleges that PerfectVision's SignaLoc Connector infringes the

Ehret Patent.  (*Id*.)  In addition, the Complaint asserts three tort claims arising under New York

law based on representations made by PerfectVision that lead PPC to believe that "the parties

were working in good faith on a partnership agreement[,]" which "caused PPC to forego certain

sales opportunities that it otherwise would have been able to purse" and "provide[] PerfectVision

with certain technical and strategic information concerning various customers and the market for

certain types of coaxial cable connectors . . . [that was] derived though the significant investment

of time and resources by PPC."  (*Id*. at ¶¶ 13-15.)  The Complaint alleges that, as part of this

information sharing, "PerfectVision employees were shown PPC product demonstrations,

technical data, and given access to PPC's testing facility in East Syracuse, New York."  (*Id*. at ¶

15.)  The Complaint further alleges that "PerfectVision never actually intended to enter into such

an agreement with PPC [and] [i]nstead . . . was simply using the discussions with PPC as a

stalling tactic to hold PPC at bay so that PerfectVision would have enough time to develop a new competitive connector, what it is now calling its SignaLoc connector." (*Id*. at ¶16.) The Complaint alleges that, as a result of PerfectVision's misrepresentations, PPC "los[t] out on sales opportunities." (*Id*. at ¶17.)

Also on February 5, 2013, PPC commenced an action in the Northern District of New York against PCT, in which PPC has asserted a cause of action for infringement of the Ehret Patent by one of PCT's products. (*See* Nash Decl. at ¶3, Ex. 1.)

### C.      History Of The Arkansas Action

PerfectVision commenced the Arkansas Action on October 4, 2012, seeking a declaration from the Arkansas Court that the SignaLoc Connector does not infringe any valid or enforceable claims in United States Patent Nos. 8,192,237, 7,845,976, 7,950,958, 8,075,338, 8,157,589, and 8,167,646 (collectively, the "Original Patents-in-Suit"). (Dkt. No. 8, Attach. 2, Ex. A.)

On October 24, 2012, PerfectVision sent a letter to PPC with a two-page flyer that included illustrations of the SignaLoc Connector, and enclosed a physical sample of the connector. (*See* Nash Decl. at ¶4, Ex. 2.) Two days later, based on a review of the information provided by PerfectVision, and in an effort to "eliminate the case and controversy between the parties and, therefore, fully resolve the case," counsel for PPC sent a letter to counsel for PerfectVision that stated, among other things:

> PPC will release and covenant not to sue PerfectVision for infringement of U.S. Patent Nos. 8,192,237, 7,845,976, 7,950,958, 8,167,646, 8,075,338, and 8,157,589 . . . based on PerfectVision's manufacture, importation, use, sale and/or offer of the SignaLoc connectors as depicted in the illustrations and represented in the product sample.

(*See id*. at ¶5, Ex. 3.)

On December 6, 2012, PerfectVision filed in the Arkansas Action a motion for leave to amend its Complaint, with an accompanying proposed Amended Complaint. (*See id*. at ¶6, Ex. 4 [Motion for Leave to Amend]; Dkt. No. 8, Attach. 2, Ex. B [proposed Amended Complaint].) The first proposed Amended Complaint sought to add declaratory judgment causes of action for non-infringement with respect to United States Patent Nos. 8,313,353, 8,313,345, 8,323,053, and 8,323,060 (collectively, the "New Patents-in-Suit"), as well as the patent application that eventually issued as the Ehret Patent, based on the same set of facts that allegedly gave rise to the Original Complaint. (Dkt. No. 8, Attach. 2, Ex. B at ¶¶17, 29-68.)

On December 13, 2012, counsel for PPC sent a letter to counsel for PerfectVision in which PPC covenanted not to sue PerfectVision for infringement of the Original Patents-in-Suit and the New Patents-in-Suit (collectively, the "Unasserted Patents") "based on PerfectVision's manufacture, importation, use, sale and/or offer of the SignaLoc connectors as depicted in the illustrations and represented in the product sample previously provided by PerfectVision to PPC on or about October 24, 2012." (*See* Nash Decl. at ¶7, Ex. 5.)

On February 4, 2013, at 11:01 p.m. Central Standard Time, PerfectVision filed in the Arkansas Action a second motion for leave to amend its Original Complaint, with an accompanying proposed Second Amended Complaint. (*See* Nash Decl. at ¶8, Ex. 6 [Second Motion for Leave to Amend]; Dkt. No. 8, Attach. 2, Ex. C [proposed Second Amended Complaint].) The proposed Second Amended Complaint is essentially identical to the proposed First Amended Complaint, but adds a declaratory judgment cause of action for non-infringement of the Ehret Patent. (*Compare* Dkt. No. 8, Attach. 2, Ex. B *with* Dkt. No. 8, Attach. 2, Ex. C.)

PPC has moved to (1) dismiss the Original Complaint for lack of subject matter jurisdiction, (2) deny the requests for leave to amend also for lack of subject matter jurisdiction,

and (3) dismiss, transfer and/or stay the Arkansas Action in deference to the instant action.  (*See* Nash Decl. at ¶¶9, 10, 11, Exs. 7, 8, 9.)  In addition to moving for leave to amend its Complaint, PerfectVision has cross-moved to enjoin PPC from prosecuting this action.  (*See id*. at ¶12, Ex. 10.)  The motions are pending before the Arkansas Court, but are not fully briefed.

## ARGUMENT

### I.     PerfectVision's Motion Should Be Denied Under The First Filed Rule.

"[T]he general rule favoring the forum of the first-filed case [should be followed] unless considerations of judicial and litigant economy, and the just and effective disposition of disputes, requires otherwise."  *Electronics for Imaging, Inc. v. Coyle*, 394 F.3d 1341, 1347 (Fed. Cir. 2005).  A motion to dismiss or transfer a first filed action should not be granted unless the movant satisfies its "heavy burden" of showing an exception to the first filed rule.  *See, e.g.*, *Schnabel v. Ramsey Quantitative Sys*., 322 F. Supp. 2d 505, 507, 511-14 (S.D.N.Y. 2004) (denying movant's motion to dismiss or transfer, noting that the movant failed to meet "its heavy burden of showing 'special circumstances' to justify dismissing this first filed action," or that there existed "an exception to the first filed rule").

This case was filed on February 5, 2013.  (Dkt. No. 1.)  To date, there are no pending claims in the Arkansas Action with respect to infringement of the Ehret Patent.  Rather, pending in the Arkansas Action is a motion for leave to file a proposed Amended Complaint, which contains a proposed cause of action for declaratory relief concerning the Ehret Patent.  This is an important distinction that cannot be ignored.

There can be no dispute that, in deciding which of two actions is the first filed, "a proposed amended complaint is not [a] filed complaint."  *Northwest Airlines, Inc. v. Filipas*, 07-CV-4803, 2008 U.S. Dist. LEXIS 6928, *4 (D. Minn. Jan. 30, 2008) (noting that "a proposed

amended complaint is not [a] filed complaint"); *see also Fleet Capital Corp. v. Mullins*, 03-CV-6660, 2004 U.S. Dist. LEXIS 4425, *13 (S.D.N.Y. Mar. 18, 2004) ("Fleet filed the present action after Mullins moved for leave to file an amended complaint adding Fleet as a party in the Texas action, but before the Texas court granted Mullins's motion[ and] [t]hus, this action may be considered the first-filed with respect to Fleet."); *Oakley, Inc. v. Bugaboos Eyewear Corp*., 09-CV-2037, 2010 U.S. Dist. LEXIS 110337, *9 (S.D. Cal. Oct. 15, 2010) (rejecting argument that allegation in proposed amended answer has been asserted, noting that the "argument ignores the fact that Oakley's *proposed* amended answer is exactly that-a *proposed* pleading that is not yet Oakley's operative pleading in response to Bugaboos' counterclaims-and that Bugaboos itself has *opposed* the filing of that proposed pleading") (emphasis in original).  Thus, even assuming the proposed Amended Complaint in the Arkansas Action may be accepted for filing, this action will remain the first filed.

In support of its argument to the contrary, PerfectVision states that "courts have routinely held that, if parties are involved in a lawsuit regarding patent rights in one forum and one of the parties later files a second action in another forum on a newly-issued ***and related patent***, the original forum is the first-filed (and favored) forum."  (*See* Dkt. No. 8, Attach. 1, at 8 [emphasis added].)[1]  However, assuming arguendo the accuracy of this principle, it ***does not*** apply to the facts of this case for at least two reasons.  First, the principle operates on the assumption that the Arkansas Court has jurisdiction over the Original Complaint, which is incorrect.  Second, the principle operates on the assumption that the Ehret Patent is "related" to the patents that were the

---

[1] PerfectVision relies on the following three cases as offering support for this principle, which are discussed and distinguished below: *Cosden Oil & Chemical Co. v. Foster Grant Co*., 432 F. Supp. 956 (D. Del. 1977); *Intel Corp. v. AmberWave Sys. Corp*., 233 F.R.D. 416 (D. Del. 2005); and *Toy Biz v. Centuri Corp*., 990 F. Supp. 328 (S.D.N.Y. 1998).  (*See* Dkt. No. 8, Attach. 1, at 8-10.)

subject of the Complaint filed in the Arkansas Action, which is also incorrect, and certainly not established as an evidentiary matter by PerfectVision.

A.    **The Arkansas Court Lacks Subject Matter Jurisdiction Over The Original Complaint.**

As argued at length by PPC in its memoranda of law in support of its motions to dismiss the Original Complaint and deny PerfectVision's leave to amend,[2] the Arkansas Court lost jurisdiction over the Original Complaint on October 26, 2012, when PPC presented the first covenant not to sue. *See, e.g.*, *Already, LLC v. Nike, Inc*., 184 L. Ed. 2d 553 (2013) (upholding the long-standing rule that covenants not to sue may divest a court of subject matter jurisdiction over claims related to the subject of the covenant); *Benitec Australia, Ltd. v. Nucleonics, Inc*., 495 F.3d 1340, 1343-49 (Fed. Cir. 2007) (upholding finding of lack of subject matter jurisdiction based on a statement in a brief that the plaintiff "covenants and promises not to sue [defendant] for patent infringement arising from activities and/or products occurring on or before the date dismissal was entered in this action" and lack of evidence of future plans that meet the immediacy and reality requirement); *Super Sack Mfg. Corp. v. Chase Packaging Corp*., 57 F.3d 1054, 1059-60 (Fed. Cir. 1995) (holding that an unconditional agreement not to sue an alleged infringer as to any claim of the patents-in-suit, based upon products currently manufactured and sold by the alleged infringer, was sufficient to divest the district court of jurisdiction over the alleged infringer's counterclaims for noninfringement, invalidity, and unenforceability).[3]

---

[2] *See* Nash Decl. at ¶¶11, 12, 13, Exs. 9, 10, 11.

[3] *See also Furminator, Inc. v. Ontel Prods. Corp*., 246 F.R.D. 579, 590-92 (E.D. Mo. 2007) (dismissing for lack of subject matter jurisdiction where covenant not to sue covered all of the products manufactured, imported, used, sold, and/or offered for sale on or before the date of the covenant); *Crossbow Tech., Inc. v. YH Tech.*, 531 F. Supp. 2d 1117, 1122-23 (N.D. Cal. 2007) (holding that covenant which covered only past or current infringement was sufficient to divest the court of subject matter jurisdiction).

Although PerfectVision argues in its motion that the covenant not to sue is inadequate, PerfectVision fails to cite any law establishing as much.  This is not surprising given the prevailing Supreme Court and Federal Circuit law.  As indicated by PPC in its filings in the Arkansas Action, the covenant not to sue is properly conditioned only on PPC's understanding of the SignaLoc Connector,[4] and satisfies the requirement of showing that the alleged controversy that gave rise to Article III jurisdiction "cannot reasonably be expected to recur."  *Already, LLC*, 184 L. Ed. 2d at 563.  Moreover, "despite every incentive, opportunity, and invitation to do so," PerfectVision has "refused to suggest that it has plans to create any arguably infringing [connector] that does not unambiguously fall within the scope of the covenant[.]"  *Id.* at 566.

Based on the Arkansas Court's loss of subject matter jurisdiction over the Original Complaint after October 26, 2012, that Court never had subject matter jurisdiction to consider anything filed thereafter, including motions for leave to file the proposed Amended Complaints. *See Grupo Dataflux v. Atlas Global Group, L.P.*, 541 U.S. 567, 570-71 (2004) (noting that a post-filing change in a partnership's citizenship resulting from withdrawal of two partners could not cure the defect in diversity jurisdiction); *Matthews Intern. Corp. v. BioSafe Eng'g, LLC*, 695 F.3d 1322, 1331-32 (Fed. Cir. 2012) ("[B]ecause the trial court had no jurisdiction over the Method Patents at issue in Matthews' original complaint, it was without authority to consider the System Patent which issued after that complaint was filed."); *Hildebrand v. Dentsply Int'l, Inc.*, 06-CV-5439, 2011 U.S. Dist. LEXIS 112458, *9 (E.D. Pa. Sept. 30, 2011) (finding, where no federal subject matter jurisdiction existed, that the court "cannot even consider Plaintiffs' Motion for Reconsideration, because it lacks the jurisdiction to do so"); *Vianix Delaware LLC v. Nuance*

---

[4]  *See, e.g., Internet Pipeline, Inc. v. Aplifi, Inc.*, 10-CV-6089, 2011 U.S. Dist. LEXIS 112467, at *6-10 (E.D. Pa. Sept. 29, 2011) (dismissing declaratory judgment claims in view of covenant not to sue even though the covenant was contingent on the accuracy of the accused infringer's counsel's representations as to the characteristics of the accused products).

*Commc'n, Inc.*, 09-CV-0067, 2009 U.S. Dist. LEXIS 40992, *5 (D. Del. May 12, 2009) ("Because Vianix Delaware LLC did not have standing to assert its claims when it filed suit, the Court does not have subject matter jurisdiction to consider anything filed thereafter, including the amended complaint."); *Lans v. Gateway 2000, Inc.*, 84 F. Supp. 2d 112, 115-16 (D. D.C. 1999) (finding that patent assignor was not allowed to retroactively create jurisdiction by filing an amended complaint to substitute the current patent owner, who was the only party with standing to sue for infringement).

Thus, this case is completely distinguishable from the three district court cases on which PerfectVision relies as supposed support for its argument that the Eastern District of Arkansas is the first filed forum because the Original Complaint is pending. *See Cosden Oil & Chemical Co. v. Foster Grant Co.*, 432 F. Supp. 956 (D. Del. 1977); *Intel Corp. v. AmberWave Sys. Corp.*, 233 F.R.D. 416 (D. Del. 2005); *Toy Biz v. Centuri Corp.*, 990 F. Supp. 328 (S.D.N.Y. 1998). In each of those cases, there was no challenge regarding the jurisdiction of the court where the first complaint between the parties to the dispute was pending, let alone a presentation of a covenant not to sue by the patentee. *See generally*, *Cosden Oil & Chemical Co.*, 432 F. Supp. 956; *Intel Corp.*, 233 F.R.D. 416; *Toy Biz*, 990 F. Supp. 328 (S.D.N.Y. 1998).

In other words, PerfectVision's theory that the Arkansas Court somehow has jurisdiction over the Original Complaint is wholly without merit. *See Abbott Labs. v. Johnson and Johnson, Inc.*, 524 F. Supp. 2d 553, 557-58 (D. Del. Nov. 28, 2007) (rejecting argument by accused infringer that proposed supplemental pleading should be accepted for filing and deemed to relate back to the original pleading for purposes of determining the first to file suit where patentee covenanted not to sue patents that were the subject of the original pleading, distinguishing *Cosden Oil & Chem. Co.* as a case that "did not involve a covenant not to sue or other

circumstances effectuating a divestiture of jurisdiction of the originally-filed claims"), *aff'd without opn.*, 297 F. App'x 966 (Fed. Cir. 2008).

### B.   The Ehret Patent Is Not "Related" To The Patents That Were The Subject Of The Original Complaint Filed In The Arkansas Action

Also without merit is PerfectVision's suggestion that the Ehret Patent is "related" to the patents that were the subject of the Original Complaint filed in the Arkansas Action, *i.e.*, the Unasserted Patents.  The word "relate" in this context refers to the similarity between the patents for purposes of determining whether the proposed Amended Complaint (assuming it will eventually be filed) relates back to the Original Complaint.  "The Federal Circuit has not yet determined whether or under what circumstances the 'relation back' doctrine applies to patent infringement claims where the amendment adds claims involving different patents from those at issue in the original filing."  *Halo Elecs., Inc. v. Bel Fuse Inc*., 07-06222, 2008 U.S. Dist. LEXIS 109786, *8 (N.D. Cal. May 5, 2008); *see also Mann Design, Ltd. P'ship v. Bounce, Inc*., 138 F. Supp. 2d 1174, 1178-79 (D. Minn. 2001).  However, "[d]istrict courts considering this issue have tended to find that a claim for infringement of one patent is the same 'conduct or occurrence' as a claim for infringement of another patent only where the second patent was 'part and parcel' of the controversy surrounding the earlier patent."  *Halo Elecs., Inc.*, 2008 U.S. Dist. LEXIS 109786, *8 (collecting cases).

Here, the Ehret Patent is ***not*** a member of any of the families of the Unasserted Patents (*e.g.*, it is not a continuation patent of any of the Unasserted Patents).  (*See* Dkt. No. 1, Attach. 1.)  Thus, this case is further distinguishable from *Cosden Oil & Chemical Co*.  In that case, the court permitted a later filed amended complaint to relate back to the filing date of the original complaint for purposes of determining which of two competing suits was the first filed based on "the similarity . . . and . . . intimate relationship between the respective file histories" of the

patent that was the subject of the original complaint and the patent that was the subject of the amended complaint. *Cosden Oil & Chemical Co.*, 432 F. Supp. at 960. Here, the Ehret Patent does not share a specification or file history with any of the Unasserted Patents.

Moreover, the Ehret Patent is the ***only*** patent that is the subject of PPC's infringement cause of action with respect to the SignaLoc Connector. In other words, this case is also further distinguishable from *Intel Corp*. In that case, the court permitted a later filed amended complaint to "relate back" to the filing date of the original complaint "for purposes of determining which of two competing suits should go forward" because "the same Intel devices are accused of infringing ***both patents*.**" *Intel Corp.*, 233 F.R.D. at 417-19 (emphasis added). Indeed, PPC has provided PerfectVision with a covenant not to sue with respect to the Unasserted Patents. There is thus no basis for PerfectVision's suggestion that the Ehret Patent is related to the Unasserted Patent, and that the filing of the proposed Second Amended Complaint therefore relates back to the filing date of the Original Complaint for purposes of the first filed rule. *See Abbott Labs.*, 524 F. Supp. 2d at 557-58.

For these reasons, as well as the fact that the Arkansas Court lacks subject matter jurisdiction over the Original Complaint, there is no basis to conclude that the proposed Second Amended Complaint, which has yet to be accepted for filing in the Arkansas Action, was "filed" before the instant action. Moreover, PerfectVision has failed to argue, let alone adduce record evidence establishing, that "considerations of judicial and litigant economy, and the just and effective disposition of disputes require [departure from the first filed rule]." *Electronics for Imaging, Inc.*, 394 F.3d at 1347. To the contrary, as discussed below, there are only additional compelling circumstances that warrant litigating the dispute in this Court.

For these reasons, PerfectVision's motion should be denied under the first filed rule.  *See, e.g.*, *Schnabel*, 322 F. Supp. 2d at 507, 511-14.

## II.      Transfer Is Not Warranted Under 28 U.S.C. § 1404(a).

PerfectVision's motion should also be denied because the factors set forth in 28 U.S.C. § 1404(a) favor maintaining the action in this district.

In evaluating whether an action may be transferred under Section 1404, "a district court must conduct a two-part test: (1) whether the action to be transferred might have been brought in the transferee venue; and (2) whether the balance of convenience and justice favors transfer." *Defenshield Inc. v. First Choice Armor & Equip*., 10-CV-1140, 2012 U.S. Dist. LEXIS 44276, *18 (N.D.N.Y. Mar. 29, 2012) (internal quotation marks and citation omitted).[5]

When an action could have been brought in the transferee forum, the non-exclusive list of factors that courts consider in evaluating the balance of convenience and justice include:

> (1) the convenience of witnesses; (2) the convenience of the parties; (3) the location of relevant documents and the relative ease of access to those sources of proof; (4) the situs of the operative events in issue; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) the comparative familiarity of each district with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) judicial efficiency and the interests of justice.

*Defenshield Inc.*, 2012 U.S. Dist. LEXIS 44276, *35-36.

Although "[t]here is no rigid formula for balancing these factors and no single one of them is determinative[,]" the district court must "give due deference to the plaintiff's choice of forum which should not be disturbed unless the balance of convenience and justice weigh heavily in favor of defendant's forum." *Citigroup, Inc. v. City Holding Co*., 97 F. Supp. 2d 549,

---

[5] PPC does not dispute that this action could have been brought in the Eastern District of Arkansas.

561 (S.D.N.Y. 2000). "The party moving for a change of venue bears the burden of establishing by clear and convincing evidence that transfer is appropriate." *Am. S.S. Owners Mut. Prot. & Indem. Ass'n v. Lafarge N. Am. Inc*., 474 F. Supp. 2d 474, 489 (S.D.N.Y. 2007).

### A.    Weight Accorded Plaintiff's Choice Of Forum

"The first factor warranting consideration is Plaintiff's choice of forum." *Tomjai Enters., Corp. v. Laboratorie Pharmaplus USA, Inc*., 12-CV-3729, 2012 U.S. Dist. LEXIS 107033, *13 (S.D.N.Y. July 31, 2012). "A plaintiff's choice of forum is entitled to considerable weight and should not be disturbed unless other factors weight strongly in favor of transfer." *Neil Bros. Ltd. v. World Wide Lines, Inc*., 425 F. Supp. 2d 325, 333 (E.D.N.Y. 2006); *see also Iragorri v. United Techs. Corp*., 274 F.3d 65, 70-71 (2d Cir. 2001) ("[U]nless the balance is strongly in favor of the defendant, the plaintiffs choice of forum should rarely be disturbed." [internal quotation marks omitted.]).

Here, PPC has chosen to litigate its causes of action in the forum in which it resides, and in which it has been headquartered for more than seventy years. (Jackson Decl., at ¶3.) Moreover, as the allegations in the Complaint indicate, the operative facts in this action occurred in this district. As a result, this factor weighs against transfer. *Defenshield Inc.*, 2012 U.S. Dist. LEXIS 44276, *45-46.

### B.    Convenience Of The Witnesses

"Convenience of both party and non-party witnesses is probably the single-most important factor in the analysis of whether transfer should be granted." *In re Bennett Funding Group, Inc*., 259 B.R. 243, 249 (N.D.N.Y. 2001). However, "the convenience of non-party witnesses is the more important factor." *Research Found. of State Univ. of New York v. Luminex Corp*., 07-CV-1260, 2008 U.S. Dist. LEXIS 88618, *6 (N.D.N.Y. Nov. 3, 2008) (recognizing

that the convenience of party witnesses can also be considered).  "An evaluation of this factor involves more than a mere tally of witnesses who reside in the current forum in comparison to the number located in the proposed transferee forum."  *Defenshield Inc.*, 2012 U.S. Dist. LEXIS 44276, *36.  "Rather, the Court should qualitatively evaluate the materiality of the testimony that witnesses may provide."  *Id*.

As an initial matter, PerfectVision has failed to adduce any evidence in support of its argument that this factor weighs in favor of transfer.  (*See generally*, Dkt. No. 8, Attach. 1.)  Rather, PerfectVision has simply offered the affidavit of its Chief Executive Officer, which contains only a vague and conclusory statement that "witnesses with knowledge of PerfectVision's product . . . are primarily located in Arkansas."  (Dkt. No. 8, Attach. 12, at ¶7.)  Such a showing fails to comply with the requirement that "[a] party seeking transfer on this ground must identify the witnesses and make a general statement of what their testimony will cover."  *Coloplast A/S v. Amoena Corp*., 92-CV-3432, 1992 U.S. Dist. LEXIS 17587, *7 (S.D.N.Y. Nov. 18, 1992).

Moreover, while PerfectVision has argued that discovery will "focus on the accused SignaLoc product," discovery and the presentation of evidence at trial will not be so limited.  For example, discovery will also "focus on" matters such as the conception of the claimed invention and prosecution of the Ehret Patent.  Thus, among other things, testimony from "individuals who may be knowledgeable about the patents-in-suit — the named inventors and the prosecuting attorneys[,]" will be important and necessary.  *See Cirrex Sys. LLC v. InfraReDx, Inc*., 10-CV-3952, 2010 U.S. Dist. LEXIS 90814, *5 (S.D.N.Y. Aug. 31, 2010).

It also bears emphasizing that the prosecuting attorney for the Ehret Patent, Jonathan Madsen, is a non-party witness located within this district,[6] and is not subject to compulsory process in the Eastern District of Arkansas.  Two of the four inventors of the Ehret Patent, both of whom are employees of PPC and played a significant role in the invention, are also located within this district, as are the employees of PPC who can provide testimony regarding PPC's tort claims.  (*See* Jackson Decl. at ¶¶14, 19.)

Moreover, perhaps most significant, two of the four inventors of the Ehret Patent are non-party witnesses.  (*See* Jackson Decl. at ¶14.)  One of these individuals, Richard Haube, resides in this district (and is not subject to compulsory process in Arkansas).  (*See* Jackson Decl. at ¶14.)  The other individual, Trevor Ehret, resides in Connecticut.  (*See* Dkt. No. 1, Attach. 1.)  As Mr. Jackson's declaration makes clear, the inventors conceived of the invention, and played a significant role in its development.  (Jackson Decl. at ¶13.)  In other words, the testimony of the named inventors will be central to explaining the invention and its conception to the jury, and PPC should be able to present that testimony to the jury live and in person.  *See, e.g., United States v. Int'l Bus. Machs. Corp.,* 90 F.R.D. 377, 381 (S.D.N.Y. 1981) ("There is a strong preference for live testimony being recognized by the courts, as it provides the trier of fact the opportunity to observe the demeanor of the witness."); *First Union Nat'l Bank v. Paribas*, 135 F. Supp. 2d 443, 448 (S.D.N.Y. 2001) (noting that there exists a "strong preference for live trial testimony"), *aff'd sub nom.*, *First Union Nat'l Bank v. Arab African Int'l Bank*, 48 F. App'x 801 (2d Cir. 2002) (unpublished opinion); *Lasala v. Lloyds TSB Bank*, 514 F. Supp. 2d 447, 460-61 (S.D.N.Y. 2007).

---

[6] Jackson Decl., at ¶14.

In addition, although completely ignored by PerfectVision in its papers, PPC has asserted three tort claims against PerfectVision, which are based in large part on conduct that occurred within this district.  More specifically, PPC has alleged that the parties engaged in meetings focused on "new ways to partner to sell certain of PPC's coaxial cable connectors to certain of PerfectVision's customers." (Dkt. No. 1 at ¶13.)  PPC also alleges that, based on representations made by PerfectVision, it believed "that the parties were working in good faith on a partnership agreement with respect to [certain] customers[,]" and therefore decided "to forego certain sales opportunities that it otherwise would have been able to purse."  (*Id*. at ¶14.)  In addition, PPC alleges that it provided PerfectVision "with certain technical and strategic information concerning various customers and the market for certain types of coaxial cable connectors."  (*Id*. at ¶¶14-15.)  "As part of this [process], PerfectVision employees were shown PPC product demonstrations, technical data, and given access to PPC's testing facility in East Syracuse, New York."  (*Id*.)

However, PPC alleges that "PerfectVision never actually intended to enter into such an agreement with PPC[, but rather] "was simply using the discussions with PPC as a stalling tactic to hold PPC at bay so that PerfectVision would have enough time to develop [its] . . . SignaLoc connector."  (*Id*. at ¶16.)  PPC alleges that "PerfectVision's misleading and deceptive conduct injured PPC by causing it to lose out on sales opportunities."  (*Id*. at ¶17.)

Based on these factual allegations, which must be accepted as true for purposes of evaluating PerfectVision's motion, discovery will also focus on testimony from several current or former PPC employees who were present during PerfectVision's meetings at PPC's facility, and/or were involved communications with PerfectVision, including John Mezzalingua, David Jackson and Jeremy Amidon.  (*See* Jackson Decl. at ¶20.)  These individuals reside within this

district.  (*Id*. at ¶¶2, 20.)   However, one of these individuals, John Mezzalingua, is no longer employed by PPC.  (*Id*. at ¶20.)   As a result, while he is subject to compulsory process in this district such that his live testimony at trial can be compelled, he is not subject to compulsory process in Arkansas.

Finally, third-party testimony from purchasers or prospective purchasers of the SignaLoc Connectors, such as Cablevision Systems Corporation ("Cablevision"),[7] may also be necessary to establish, among other things, infringing offers to sell the SignaLoc Connector as well as harm suffered by PPC as a result of PerfectVision's tortious conduct.  Cablevision resides within this state, and its service territory extends into this district.  (*Id*. at ¶16.)

Accordingly, this district is a far more convenient forum for both PPC and the non-party witnesses.  Thus, this factor weighs strongly against transfer.

### C.   Convenience Of The Parties

For the same reason that it would be inconvenient for PerfectVision to travel to this Court, it would be inconvenient for PPC to travel to the Arkansas Court.  This factor is neutral to transfer.  However, it bears noting that PerfectVision's attorney, John R. Horvack, Jr., is located in Connecticut, and is in fact admitted to practice in New York and this district.  PPC's attorneys are not admitted to practice in Arkansas, and PPC has had to retain local counsel in Arkansas, thereby making its more expensive for PPC to litigate the dispute in Arkansas without a corresponding increase in costs to PerfectVision for having to litigate the dispute here.

### D.   Location Of Relevant Documents And Relative Ease Of Access To Sources Of Proof

Presumably, documents discussing and depicting the design of PerfectVision's SignaLoc Connector are at its headquarters.  However, documents relevant to the Ehret Patent, as well as

---

[7]  Jackson Decl. at ¶16.

PPC's tort claims, are at PPC's headquarters.  (Jackson Decl. at ¶13.)  Under such circumstances, and "given the technological age in which we live, with the widespread use of, among other things, electronic document production[,]"[8] it would appear that this factor is neutral.  *See Easyweb Innovations, LLC v. Facebook, Inc.*, 11-CV-5121, 2012 U.S. Dist. LEXIS 123833, *24 (E.D.N.Y. Aug. 30, 2012); *Am. S.S. Owners Mut. Prot. and Indem. Ass'n, Inc.*, 474 F. Supp. 2d at 484 ("The location of relevant documents is largely a neutral factor in today's world of faxing, scanning, and emailing documents."); *DiStefano v. Carozzi N. Am., Inc.*, 98-CV-7137, 2002 U.S. Dist. LEXIS 23042, *11-12 (E.D.N.Y. Nov. 16, 2002) ("Although the location of relevant documents is entitled to some weight when determining whether a case should be transferred, modern photocopying technology deprives this issue of practical or legal weight." (citations omitted)).

However, as mentioned above, third party witnesses such as Cablevision may play a role in this litigation, specifically with regard to PPC's proof regarding damages.  Thus, this factor also weighs against transfer.

### E.      Situs Of Operative Events

With respect to PPC's patent infringement claim, "[o]perative facts in a patent infringement action include those relating to the design, development, and production of a patented product . . . [as well as] the area in which the allegedly infringing device was sold or offered for sale[, and thus] venue analysis may demonstrate that there multiple loci of operative facts."  *Defenshield Inc.*, 2012 U.S. Dist. LEXIS 44276, *40.  With respect to tort claims, "the place where harm of a tort occurs is relevant for venue purposes."  *Astor Holdings, Inc. v. Roski*, 01-CV-1905, 2002 U.S. Dist. LEXIS 758, *23-24 (S.D.N.Y. Jan. 17, 2002); *see also Myers v.*

---

[8] *Easyweb Innovations, LLC v. Facebook, Inc.*, 11-CV-5121, 2012 U.S. Dist. LEXIS 123833, *24 (E.D.N.Y. Aug. 30, 2012).

*Bennett Law Offices*, 238 F.3d 1068, 1076 (9th Cir. 2001) (citing *Bates, Bates v. C & S Adjusters, Inc.*, 980 F.2d 865, 867-68 (2d. Cir. 1992)) ("In a tort action, the locus of the injury [i]s a relevant factor" of the § 1391(b)(2) analysis).

The Ehret Patent was conceived of and developed within this district.  (*See* Jackson Decl. at ¶13.)  Moreover, as indicated in the Complaint, the operative events with respect to PPC's tort claims took place within this district.  Specifically, from PPC's headquarters in East Syracuse, New York, the parties engaged in discussions focused on "new ways to partner to sell certain of PPC's coaxial cable connectors to certain of PerfectVision's customers."  (Dkt. No. 1 at ¶ 13.) Moreover, "PerfectVision employees were shown PPC product demonstrations, technical data, and given access to PPC's testing facility in East Syracuse, New York."  (*Id*. at ¶ 15.)

As a result, this factor weighs against transfer.

### F.    Availability Of Process To Compel Attendance Of Unwilling Witnesses

"Rule 45 of the Federal Rules of Civil Procedure limits a district court's power to subpoena a witness to 'within 100 miles of the place specified for the deposition, hearing, trial, production, or inspection.'"  *Defenshield Inc.*, 2012 U.S. Dist. LEXIS 44276, *40 (quoting Fed. R. Civ. P. 45(b)(2)).  "In determining whether a change of venue is appropriate, the Court will . . . examine the ability to compel the attendance of witnesses."  *Id*. (noting that "this factor is generally relevant only with respect to third-party witnesses, since employees of the parties will as a practical matter be available in any venue by virtue of the employment relationship").

In its memorandum of law, PerfectVision does not identify any witnesses that would be unwillingly to appear in the Northern District of New York.  PerfectVision's "inability to articulate any unfairness in maintaining venue in the Northern District of New York as it relates to this factor weighs against transfer."  *Defenshield Inc.*, 2012 U.S. Dist. LEXIS 44276, *43.

Moreover, as stated above, the prosecutor of the Ehret Patent, Jonathan Madsen, one of the inventors, Richard Haube, as well as John Mezzalingua, are non-party witnesses that reside in this district. As such, while they may be compelled to testify in this district, they are not subject to compulsory process in Arkansas. In other words, there exists a possibility that, if this case is transferred to Arkansas, witnesses essential to this case may not appear before a jury because Arkansas is without authority to compel their attendance. No such problems exist with respect to these non-party witnesses if this case is maintained in this district.

For these reasons, this factor weighs against transfer. *See Defenshield Inc.*, 2012 U.S. Dist. LEXIS 44276, *43.

### G.    Relative Means Of Parties

This factor is neutral.

### H.    Comparative Familiarity Of Each District With Governing Law

PPC's complaint includes a cause of action for patent infringement, as well as three tort causes of action arising under New York law, which, again, PerfectVision ignores in its motion papers. Clearly, this Court is more familiar with claims arising under New York law. Indeed, this Court has analyzed a claim of negligent misrepresentation under New York law on at least two occasions,[9] a claim for violation of N.Y. Gen. Bus. Law § 349 on at least three occasions,[10] and a claim of common law unfair competition on at least two occasions.[11]  As a result, this

---

[9]  *Rescuecom Corp. v. Chumley*, 07-CV-0690, 2011 U.S. Dist. LEXIS 31928, *46-49 (N.D.N.Y. Mar. 28, 2011); *Nissan Motor Acceptance Corp. v. Dealmaker Nissan, LLC*, 09-CV-0196, 2011 U.S. Dist. LEXIS 2627, *15-19 (N.D.N.Y. Jan. 11, 2011)

[10]    *Wood v. Maguire Auto. LLC*, 09-CV-0640, 2011 U.S. Dist. LEXIS 109293, *21-26 (N.D.N.Y. Sept. 26, 2011); *Cohen v. Transp. Ins. Co.*, 10-CV-0743, 2011 U.S. Dist. LEXIS 92375, *13-23 (N.D.N.Y. Aug. 18, 2011); *CommScope, Inc. v. Commscope Int'l Group Co.*, 809 F. Supp. 2d 33, 39-40 (N.D.N.Y. 2011).

[11]    *Optigen, LLC v. Int'l Genetics, Inc.*, 877 F. Supp. 2d 33, 45-46 (N.D.N.Y. 2012); *CommScope, Inc.*, 809 F. Supp. 2d at 38-39.

factor weighs against transfer.  *See, e.g., Am. Eagle Outfitters, Inc. v. Tala Bros. Corp.*, 457 F. Supp. 2d 474, 479 (S.D.N.Y. 2006).

**I.       Judicial Efficiency And Interests Of Justice**

"There is a strong policy favoring the litigation of related claims in the same tribunal in order that pretrial discovery can be conducted more efficiently, duplicitous litigation can be avoided, thereby saving time and expense for both parties and witnesses, and inconsistent results can be avoided."  *Wyndham Associates v. Bintliff*, 398 F.2d 614, 618 (2d Cir. 1968); *see also Ferens v. John Deere Co.*, 494 U.S. 516, 531 (1990) ("We have made quite clear that '[t]o permit a situation in which two cases involving precisely the same issues are simultaneously pending in different District Courts leads to the wastefulness of time, energy and money that § 1404(a) was designed to prevent.'" (quoting *Continental Grain Co. v. The FBL-585*, 364 U.S. 19, 26 (1960)).

Indeed, in situations in which there exists a related lawsuit in the transferee forum involving the same patent but a different defendant, courts have frequently found that transfer is appropriate.  *See BBC Intern. Ltd. v. Lumino Designs, Inc.*, 441 F. Supp. 2d 438, 442 (E.D.N.Y. 2006) (granting transfer in the interest of justice where the related actions both involved claims regarding the validity of the same patent, and whether the same products infringed on the patent); *Columbia Pictures Industries, Inc. v. Fung*, 447 F. Supp. 2d 306, 310 (S.D.N.Y. 2006) (granting motion to transfer in a patent infringement case to a district where the same plaintiff had a related patent infringement action pending against a different defendant based on the same underlying technology, holding that "[a]ny court that hears either case will have to understand

and make decisions about the legal effects of the defendant's BitTorrent technology and the scope of non-party discovery").[12]

Here, there is a related matter ongoing in this district, in which PPC has sued PCT, another industry competitor, alleging infringement of the Ehret Patent.  (*See* Nash Decl. at ¶3, Ex. 1.)  If this action remains in this Court, the claim terms may be construed in both actions by this Court in a coordinated manner.[13]   However, if this action is transferred to the Arkansas Court, it will result in a duplication of effort and waste of judicial resources, as well as the potential for an inconsistent construction of the same claim terms.

Finally, as an indicator of judicial efficiency, PerfectVision relies on the table within the *Judicial Business of the United States Courts* that provides the median time from filing a complaint to disposition at trial table.  While that may be one indicator of efficiency, so too is the relative congestion of the calendars of the respective courts.  Court congestion can be evaluated

---

[12]     *See also Williams v. City of New York*, 03-CV-5342, 2006 U.S. Dist. LEXIS 6470, *10 (S.D.N.Y. Feb. 21, 2006) (granting transfer from the Southern District of New York to the Eastern District of New York where the two actions "encompass[ed] similar legal and factual issues, involve[d] the same plaintiff, [were] both suits against members of DOCS, and the City anticipate[d] calling the same witnesses in its defense in both actions"); *Goggins v. Alliance Capital Mgmt., L.P.*, 279 F. Supp. 2d 228, 234 (S.D.N.Y. 2003) (granting a motion to transfer a case involving mostly similar defendants where the complaints in the related actions alleged "the same misrepresentations in public filings, relie[d] on the same alleged statements made by the Fund's portfolio manager and allege[d] the same unheeded 'red flags'"); *Fairfax Dental v. S.J. Filhol Ltd.*, 645 F. Supp. 89, 92 (E.D.N.Y. 1986) (granting plaintiffs' request to transfer venue to the Southern District where the same plaintiff had filed another patent infringement suit against a different defendant because, among other things, the invalidity of the plaintiff's patent was likely to be raised as a defense by the defendants in both actions).

[13]     Under America Invents Act, 35 U.S.C. § 299, parties accused of patent infringement may not be joined "based solely on allegations that they each have infringed the patent or patents in suit."  35 U.S.C. § 299(b).  However, Section 299 prohibits only consolidation "for trial."  35 U.S.C. § 299(a); *see also Norman IP Holdings, LLC v. Lexmark Int'l, Inc*., 11-CV-0495, 2012 U.S. Dist. LEXIS 112757, *30 (E.D. Tex. Aug. 10, 2012) (granting a motion to sever but ordering "the newly severed actions consolidated with the original filed case as to all issues, except venue, through pretrial only" in order "to permit efficient case management").  As a result, consolidation for pre-trial matters is implicitly allowed under the statute.  *See id*.

by looking at Table C-6 from the *2011 Annual Report of the Director:  Judicial Business of the United States Courts*, entitled "U.S. District Courts—Civil Cases Pending, by District and Length of Time Pending, as of September 30, 2011."  (*See* Nash Decl. at ¶13, Ex. 11.)  The Table shows that the Eastern District of Arkansas had 8,984 cases pending as of September 30, 2011, of which 5,412 had been pending for three years or more, whereas the Northern District of New York had 2,386 cases pending, 171 of which had been pending for three years or more.  In other words, the Eastern District of Arkansas is a significantly more congested district.

As a result, this factor weighs against transfer.

<u>**CONCLUSION**</u>

This case was the first filed action.  Moreover, the balance of convenience and justice favors venue in this district because none of the nine transfer factors weigh in favor of transferring venue to the Arkansas Court and at least seven factors weigh in favor of maintaining venue in here.  In other words, PerfectVision has failed to meet its clear and convincing burden of establishing that the transfer factors outweigh the deference a court is required to afford the Plaintiff's choice of forum.  For these reasons, as discussed in more detail above, PPC respectfully requests that PerfectVision's motion to dismiss, transfer and/or stay this action be denied.

Dated:  March 18, 2013

**HISCOCK & BARCLAY, LLP**


By:  _____s/Douglas J. Nash_____
        Douglas J. Nash (511889)
        John D. Cook (511491)
        Jason C. Halpin (516562)

Office and Post Office Address
One Park Place
300 South State Street

Syracuse, New York 13202
Telephone:      (315) 425-2700
Facsimile:      (315) 425-2701

*Attorneys for Plaintiff*
PPC Broadband, Inc., d/b/a PPC

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on March 18, 2013, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system, which shall send notification of such filing to the following:

> John R. Horvack, Jr.
> CARMODY & TORRANCE LLP
> 195 Church Street
> New Haven, CT 06509

> */s/ Jason C. Halpin*
> Jason C. Halpin

6957562.4